IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CHANDRA L. BERRY,                )
                                 )
      Plaintiff,                 )
                                 )     No. 2:18-cv-2654-SHL-dkv
v.                               )
                                 )
CITI CREDIT BUREAU, and          )
TRANS UNION, LLC,                )
                                 )
      Defendants.                )
_____

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTIONS TO STRIKE
PORTIONS OF VANESSA ARMBRUSTER AND DON ORLOWSKI'S DECLARATIONS
AND OBJECTIONS
and
REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
_____

On August 27, 2018, the plaintiff, Chandra Berry ("Berry"),
commenced a *pro se* civil action against City Credit Bureau ("Citi
Credit") and Trans Union, LLC ("Trans Union"), by filing a civil
warrant in the Court of General Sessions of Shelby County,
Tennessee (the "Shelby County General Sessions Court").[1]  (Civil
Warrant, ECF No. 1-2.)  The General Sessions civil warrant alleged

_____

[1] On August 27, 2018, Berry filed three separate cases in the
Shelby County General Sessions Court against various defendants
for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681,
*et seq.*, among other claims, all of which have been removed to
this court by the defendants.  (*See* Case No. 18-2654-SHL-dkv; Case
No. 18-2689-SHL-dkv; Case No. 18-2721-SHL-dkv).  The court entered
an order consolidating the cases for discovery and mediation on
December 12, 2018.  (Order, ECF No. 24.)

only:  "Suit is brought for violations of the Fair Credit Reporting

Act (FCRA).  Exhibits are attached hereto the Court shown."  (*Id.*)

No exhibits were attached.  On September 24, 2018, Trans Union

removed the action to this court, (Notice of Removal, ECF No. 1),

and on October 3, 2018, Trans Union filed an answer and affirmative

defenses to Berry's complaint, (Def.'s Ans., ECF No. 7).[2]

According to Trans Union, Citi Credit was never served with

process.  (*See* Notice of Removal ¶ 5, ECF No. 1.)  Citi Credit has

not appeared in this case.

Before the court is the August 29, 2019 motion for summary

judgment filed by Trans Union, (Mot. for Summ. J., ECF No. 81),

along with a statement of facts in support of the motion,

---

[2] On December 3, 2018, Berry filed a motion requesting leave
to amend her complaint.  (Pl.'s Mot. to Am. Compl., ECF No. 22.)
The court held a status conference on December 12, 2018 to discuss
consolidation of this case with two other cases filed by Berry for
discovery, during which Berry's pending motion to amend her
complaint was briefly discussed.  (Min. Entry, ECF No. 24.)  This
court granted Berry leave to file an amended complaint on December
17, 2018 and directed her to file and serve her amended complaint
by December 24, 2018.  (Order, ECF No. 27.)  Berry failed to do
so.  On April 9, 2019, the court held another status conference.
(Min. Entry, ECF No. 44.)  At the status conference, the court
instructed Berry that she had until April 16, 2019 to renew her
motion for leave to file the proposed amended complaint.  (*Id.*)
Berry still failed to do so.  On June 13, 2019, Berry filed a
second motion for leave to amend her complaint, which included a
second proposed amended complaint as an attachment.  (Pl.'s Second
Mot. to Am. Compl., ECF No. 67.)  This court denied that motion,
(Order, ECF No. 77), and Berry appealed, (Appeal, ECF No. 79).
The presiding district judge affirmed this court's decision.
(Order, ECF No. 86.)  Thus, the original General Sessions civil
warrant, with no attached exhibits, remains the operative
complaint in this case.  (*See* Civil Warrant, ECF No. 1-2.)

(Statement of Facts, ECF No. 83), and the declarations of Don Wagner ("Wagner"), (Wagner Decl., ECF No. 83-3), Vanessa Armbruster ("Armbruster"), (Armbruster Decl., ECF No. 83-4), and Richard Orlowski ("Orlowski"), (Orlowski Decl., ECF No. 83-7). Berry filed a response in opposition to Trans Union's motion for summary judgment on September 25, 2019, (Pl.'s Resp., ECF No. 87), along with her own affidavit and the affidavits of her sister, Karen Berry, and a work associate, Eldean Brown. (Affs. in Supp. of Pl.'s Resp., ECF Nos. 87-1, 87-2 & 88.) Trans Union filed a reply and a response to Berry's additional facts on October 8, 2019. (Def.'s Reply, ECF No. 92; Def.'s Resp. to Additional Facts, ECF No. 93.)

Additionally, before the court are Berry's September 25, 2019 motions to strike portions of the declarations of Armbruster, (Pl.'s Mot. to Strike, ECF No. 90), and Orlowski, (Pl.'s Mot. to Strike, ECF No. 91). Trans Union filed responses in opposition to the motions to strike on October 8, 2019. (Def.'s Resps. to Mots. to Strike, ECF Nos. 94 & 95.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Am. Order of Reference, ECF No. 13.)

For the following reasons, it is recommended that Berry's motions to strike portions of Armbruster and Orlowski's declarations be denied but that her motions be treated as

3

objections to portions of both declarations and that the objections
be overruled.  It is further recommended that Trans Union's motion
for summary judgment be granted.

## I.    PROPOSED UNDISPUTED FACTS

The court finds that the following facts are undisputed for
the purposes of this motion for summary judgment:[3]

On June 18, 2018, Citi Credit provided a background report
(the "Report") for Berry in connection with Berry's application to
rent property in Memphis, Tennessee from landlord April Hua
("Hua").  (June 18, 2018 Citi Credit Report, ECF No. 83-5.)  The
Report was created based in part on consumer information reported
by Trans Union and Trans Union Rental Screening Solutions, Inc.
("TURSS").  (*See* Armbruster Decl. ¶ 3, ECF No. 83-4; Berry's
Correspondence with Citi Credit, ECF No. 83-6; Def.'s Resp. to
Additional Facts ¶ 1, ECF No. 93.)  TURSS is a wholly owned

---

[3] Trans Union sets forth fifty-eight undisputed facts in its
statement of undisputed facts.  (Def.'s Statement of Facts, ECF
No. 83.)  Berry disputes many of them and sets forth eleven
additional facts in her response to Trans Union's motion for
summary judgment, many of which Trans Union disputes.  Every fact
that Berry disputes is supported with a citation to her own
affidavit, various "proposed" amended complaints that were never
properly filed, or her own discovery responses.  (*See* Pl.'s Resp.
3-7, ECF No. 87.)  "Although Rule 56(c) requires a non-moving party
to cite to materials in the record including affidavits and
responses to interrogatories, to survive summary judgment, it does
not follow that such evidence will necessarily be sufficient."
*Huffman v. Dish Network, LLC*, 2016 WL 3906816, at *3 (W.D. Tenn.
July 14, 2016)(collecting cases).

subsidiary of Trans Union[4] which offers "background screening services to customers in the multi-family and independent landlord housing rental markets." (Armbruster Decl. ¶¶ 2-3, ECF No. 83-4.) TURSS also "provides consumer reports to those customers for tenant screening purposes, sometimes via Trans Union Background Data Solutions, a product offered by TURSS." (*Id.* ¶ 3.)

The Report included a record of eviction (the "Eviction Record") for Berry dated June 18, 2015, for property associated with Berry in Memphis, Tennessee (the "Property"). (*See* June 18, 2018 Citi Credit Report 2-3, ECF No. 83-5.) The Eviction Record was first listed within a box on the first page of the Report labeled "Eviction/Landlord Records," that followed an alert stating "Exact Name Match/Exact Address Match." (*Id.*) The Eviction Record was also reflected within a box on the second page

---

[4] Trans Union claims that TURSS is a separate legal entity, (Def.'s Mem. 14, ECF No. 81-1), while Berry claims, without citation, that Trans Union and TURSS "function as a single unified [consumer reporting agency]." (Pl.'s Resp. 5, ECF No. 87). The Consumer Finance Protection Bureau ("CFPB"), the independent government agency with primary authority to enforce the FCRA, publishes a list of consumer-reporting agencies. CFPB's list as of January 2, 2020 lists Trans Union as one of the three largest nationwide providers of consumer credit reports, and separately lists TURSS as a consumer reporting agency that provides "tenant screening reports, and estimated income, resident risk scores and leasing recommendations for independent landlords and residential real estate management companies." *See* CONSUMER FIN. PROT. BUREAU, LIST OF CONSUMER REPORTING COMPANIES 8, 19 (2020), https://files.consumerfinance.gov/f/documents/cfpb_consumer-reporting-companies-list.pdf.

of the Report that detailed a June 2015 eviction lawsuit in the Shelby County General Sessions Court involving Berry and the Bank of New York Mellon. (*Id.*) The Eviction Record listed Bank of New York Mellon as the owner of the Property. (*Id.*)

Citi Credit produced the Report with information provided by TURSS detailing Berry's financial history. The background credit report that TURSS provided to Citi Credit stated that Berry had a resident score[5] of 546. (June 26, 2018 TURSS Credit Report, Ex. 1, ECF No. 83-4.)

The Report did not provide an Empirica credit score for Berry. For Trans Union to return an Empirica credit score, an applicant must have at least two accounts with Trans Union that have been updated within the previous six months. (Orlowski Decl. ¶ 5, ECF No. 83-7.) When Citi Credit requested Berry's score from Trans Union, Berry only had a public bankruptcy record on her profile. (*Id.* ¶ 6.) Because Berry had no "accounts," Trans Union's scoring model could not return a credit score for Berry. (*Id.*)

A.   Berry's Contact with TURSS

On June 26, 2018, Berry contacted TURSS twice by telephone and requested a "correct credit score" be sent to Hua. (Armbruster Decl. ¶ 6, ECF No. 83-4.)   In both instances, a TURSS

---

[5] A "ResidentScore" is a scoring model used by TURSS aimed at helping landlords predict an applicant's likelihood of being evicted. (Armbruster Decl. ¶ 5, ECF No. 83-4.)

representative explained to Berry that TURSS does not provide "credit scores," but "resident scores" based on "rental purposes." (*Id.* ¶¶ 7-9.)

On July 13, 2018, TURSS received a dispute letter from Berry stating: (i) that the Report omitted Berry's credit score; and (ii) that the Report contained an inaccurate record of eviction. (*Id.* ¶ 10.) TURSS reinvestigated the accuracy of the Eviction Record by contacting the Shelby County General Sessions Court to confirm that the eviction had been dismissed. (*Id.* ¶ 16.) TURSS modified Berry's file to reflect that the Eviction Record was dismissed on May 16, 2017. (*See* July 25, 2018 Letter from TURSS to Hua, Ex. 7, ECF No. 83-4.) TURSS did not investigate the omission of Berry's credit score because TURSS only provides "resident scores." (Armbruster Decl. ¶ 12, ECF No. 83-4.)

On July 25, 2018, TURSS mailed Berry a copy of its investigation results which stated: (i) that TURSS had confirmed with the Shelby County General Sessions Court that the eviction was dismissed on May 16, 2017; (ii) that TURSS had modified Berry's file accordingly; and (iii) that Hua was notified of the dispute resolution. (*Id.* ¶ 13; *see* July 25, 2018 Letter from TURSS to Berry, Ex. 6, ECF No. 83-4; July 25, 2018 Letter from TURSS to Hua, Ex. 7, ECF No. 83-4.)

On July 27, 2018, TURSS received a second dispute letter from Berry stating: (i) that the Report omitted Berry's credit score;

and (ii) that the Report contained an inaccurate record of
eviction. (Armbruster Decl. ¶ 15, ECF No. 83-4; July 24, 2018
Dispute Letter from Berry to TURSS, Ex. 8, ECF No. 83-4.) TURSS
then reinvestigated Berry's dispute a second time and confirmed
with the Shelby County General Sessions Court that the eviction
was not a landlord-tenant matter. (*See* TURSS's Second
Investigation Log, Ex. 9, ECF No. 83-4.) TURSS then removed the
Eviction Record from Berry's file altogether. (*Id.*) On August 7,
2018, TURSS sent Berry a copy of its investigation results which
stated that the Eviction Record had been removed and that Hua would
be notified accordingly. (Armbruster Decl. ¶ 18, ECF No. 83-4;
Aug. 7, 2018 Letter from TURSS to Berry, Ex. 10, ECF No. 83-4;
Aug. 7, 2018 Letter from TURSS to Hua, Ex. 11, ECF No. 83-4.)
TURSS did not investigate Berry's omitted credit score because
TURSS reports only "resident scores." (Armbruster Decl. ¶ 17, ECF
No. 83-4)

B.   Berry's Contact with Trans Union

On June 26, 2018, Berry contacted Trans Union by telephone
and stated that TURSS instructed her to contact Trans Union about
the omission of her credit score. (Wagner Decl. ¶ 8, ECF No. 83-
3.) Berry was transferred to a special handling department but
eventually disconnected the call. (*Id.*) On July 13, 2018, Trans
Union received correspondence from Berry stating: (i) that the
Report omitted Berry's credit score; (ii) that the "resident score"

8

was unrealistically lower than Berry's actual credit score; and
(iii) that the Report contained an inaccurate record of eviction.
(*Id.* ¶ 9; Berry's July 7, 2018 Correspondence with Trans Union,
Ex. 1, ECF No. 83-3.)  On July 16, 2018, Trans Union sent a letter
to Berry about the status of her dispute.  (July 16, 2018 Letter
from Trans Union to Berry, Ex. 2, ECF No. 83-3.)  The letter stated
that Trans Union was unable to find any of the disputed information
on Berry's Trans Union credit file and noted that it was "possible
the information was updated before [Trans Union] reviewed
[Berry's] report. . . ."  (*Id.*)

C.  <u>Berry's Allegations</u>

Berry's General Sessions civil warrant contains no factual
allegations.  (*See* Civil Warrant, ECF No. 1-2.)  It merely states
that "[s]uit is brought for violations of the [FCRA]."  (*Id.*)  The
General Sessions civil warrant does not specify what subsection of
FCRA is at issue, how Trans Union or TURSS violated the FCRA, how
Trans Union or TURSS acted willfully or negligently, or how Berry
was damaged.  (*See id.*)

Berry's discovery responses contained the following
allegations:  (i) that Trans Union and TURSS inaccurately reported
the Eviction Record; and (ii) that Trans Union and TURSS omitted
Berry's credit score.  (*See* Pl.'s Resps. to Interrogatories 4, ECF
No. 83-1.)  As to damages, Berry stated that in January 2018, she
applied for and was denied a credit card account with American

9

Express.  (*Id.* at 3.)  Berry also claimed that Trans Union and TURSS's inaccurate reporting caused her rental application with Hua to be approved on less favorable terms, including a larger deposit.  (*Id.*)

Berry's February 13, 2019 supplemental interrogatory responses further claimed that Trans Union's and TURSS's actions put Berry at "risk of losing an opportunity to acquire a new residence," required Berry to spend time resolving the disputed issues in the Report, required an unnecessary credit check to obtain approval for real estate that further diminished Berry's credit score, required Berry to pay a larger deposit for the rental property, caused Berry lost wages and other out-of-pocket expenses, led to ongoing litigation costs, and caused Berry humiliation, embarrassment, and damage to her reputation.  (Pl.'s Supp. Resps. to Interrogatories 4-6, ECF No. 83-8.)  Berry also alleged that she has suffered various forms of emotional distress damages, including, "significant frustration, worry, and emotional distress particularly during [the time Trans Union and TURSS handled Berry's disputes] and since the outset of this litigation."  (*Id.* at 7.)

D.    Trans Union's Motion for Judicial Notice

On February 3, 2020, Trans Union filed a motion for the court to take judicial notice of the state court proceedings underlying the Eviction Record.  (Def.'s Mot. to Take Judicial Notice, ECF

No. 104.) Berry filed a response in opposition on the same day.
(Pl.'s Resp., ECF No. 105.)

On June 11, 2019, defendant Specialized Loan Servicing, LLC
("Specialized Loan") filed a motion for summary judgment in one of
the companion cases filed by Berry that was consolidated for
discovery and mediation along with this case. *See Berry v.
Specialized Loan Servicing, LLC, et al.*, No. 2:18-cv-02721-SHL-
dkv (ECF No. 51-1.) Specialized Loan's motion for summary judgment
stated that the Bank of New York Mellon filed to evict Berry from
the Property in June 2015 after Berry refused to vacate. (*Id.* at
5.) Specialized Loan stated that Bank of New York Mellon was
forced to file for an unlawful detainer warrant against Berry to
take possession of the Property which they had acquired at a
foreclosure sale. (*Id.*) Berry filed a counterclaim to the
unlawful detainer warrant against Bank of New York Mellon, Wells
Fargo Home Mortgage d/b/a America's Servicing Company, and Wilson
& Associates, PLLC. Specialized Loan's motion for summary judgment
in the companion case noted that the litigation surrounding the
detainer warrant was eventually appealed and that the Tennessee
Court of Appeals later "affirmed the trial court's decision and
granted possession of the Property to [Bank of New York Mellon] in
2018." (*Id.* citing *Bank of New York Mellon v. Berry*, 2018 WL
930967, at *1 (Tenn. Ct. App. Feb. 15, 2018), *appeal denied* (June
8, 2018)).

11

After learning of these state court proceedings, Trans Union requested certified copies of the Eviction Filing, Eviction Order, and Denial of Appeal.  (Def.'s Mot. to Take Judicial Notice ¶ 4, ECF No. 104.)

The Eviction Filing was started by Bank of New York Mellon to remove Berry from the Property.  (Eviction Filing, Ex. A, ECF No. 104-1.)  Berry was served with the Eviction Filing on June 29, 2015.  (*Id.*)  The Eviction Order addressed Bank of New York Mellon's unlawful detainer complaint as well as Berry's counterclaims. (Eviction Order, Ex. B, ECF No. 104-2.)  The Shelby County General Sessions Court ruled that Berry's counterclaims were barred as *res judicata* because of an order granting summary judgment entered by the Shelby County Chancery Court and the Tennessee Court of Appeals' subsequent disposition of Berry's appeal.  (*Id.*)  The Shelby County General Sessions Court dismissed Berry's counterclaims with prejudice and ordered possession of the Property to Bank of New York Mellon.  (*Id.*)

The Denial of Appeal outlined the relevant procedural history following the Shelby County General Sessions Court's Eviction Order.  The Tennessee Court of Appeals stated:  "The [Shelby County General Sessions Court] awarded [Bank of New York Mellon] possession of [the Property] and dismissed Ms. Berry's claims, finding that they were barred by res judicata.  Ms. Berry appealed the general sessions court's judgment to the [Shelby County Circuit

Court].    [Bank of New York Mellon] filed a motion for summary
judgment, and the [Shelby County Circuit Court] issued an order on
May 16, 2017, granting [Bank of New York Mellon's] motion and
dismissing Ms. Berry's counterclaims." (Denial of Appeal 3, Ex.
C, ECF No. 104-3.)

Among other things, the Shelby County Circuit Court found
that "the undisputed facts demonstrated that as a matter of law,
that [Bank of New York Mellon] was entitled to possession of . .
. [the Property] . . ." (*Id.* at 4 (quoting the Shelby County
Circuit Court)).  The Tennessee Court of Appeals affirmed the
Shelby County Circuit Court's grant of summary judgment for Bank
of New York Mellon and its dismissal of Berry's counterclaims.
(*Id.* at 10); *see Bank of New York Mellon v. Berry*, 2018 WL 930967,
at *1 (Tenn. Ct. App. Feb. 15, 2018), *appeal denied* (June 8,
2018)).

On March 30, 2020, this court granted Trans Union's motion
for the court to take judicial notice of the Eviction Filing,
Eviction Order, and Denial of Appeal. (Order, ECF No. 120.)  This
court reasoned that "[t]he Eviction Filing, Eviction Order, and
Denial of Appeal are all publicly available state court records
that can be readily verified as accurate." (*Id.* at 6.)  This court
therefore took judicial notice of the following facts:  "(i) Bank
of New York Mellon filed an unlawful detainer warrant against Berry
in the Shelby County General Sessions Court; (ii) the Shelby County

13

General Sessions Court entered an order granting Bank of New York
Mellon possession of [the Property]; and (iii) the Tennessee Court
of Appeals affirmed the circuit court's subsequent grant of summary
judgment in favor of Bank of New York Mellon and its dismissal of
Berry's counterclaims." (*Id.* at 7.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Motions to Strike Portions of Armbruster and Orlowski's Declarations

In support of its motion for summary judgment, Trans Union
attached the declarations of Armbruster (a manager in TURSS's
operations department) and Orlowski (a senior consultant in Trans
Union's litigation department). (Armbruster Decl., ECF No. 83-4;
Orlowski Decl., ECF No. 83-7.) On September 25, 2019, Berry moved
to strike portions of Armbruster's affidavit, (Pl.'s Mot. to
Strike, ECF No. 90), and Orlowski's affidavit, (Pl.'s Mot. to
Strike, ECF No. 91). Berry objects to thirteen paragraphs in
Armbruster's twenty paragraph affidavit — Paragraphs 4, 6-9, 11,
12, 14, and 16-20. (Pl.'s Mot. to Strike, ECF No. 90.) Berry
objects to three paragraphs in Orlowski's six paragraph affidavit
— Paragraphs 4-6. (Pl.'s Mot. to Strike, ECF No. 91.) Trans Union
filed responses on October 8, 2019. (Def.'s Resp. to Mot. to
Strike Orlowski Decl., ECF No. 94; Def.'s Resp. to Mot. to Strike
Armbruster Decl., ECF No. 95.)

14

Trans Union asks this court to deny Berry's motions summarily because a motion to strike is not the proper method to defeat supporting documents attached to a motion for summary judgment. (Def.'s Resp. to Mot. to Strike Orlowski Decl. 1, ECF No. 94; Def.'s Resp. to Mot. to Strike Armbruster Decl. 1, ECF No. 95.) As a general rule, a motion to strike is not an authorized or proper way to defeat supporting documents which one party finds objectionable.   5A Wright and Miller, *Federal Practice and Procedure: Civil* 2d § 1380 (West 1990); *see also Foshee v. Forethought Federal Savings Bank*, 2010 WL 2158454, at *2 (W.D. Tenn. May 7, 2010)("[A] motion to strike is not a proper procedural method by which to defeat supporting documents that one party finds objectionable.").   The only provision within the Federal Rules of Civil Procedure which provides for striking an item is Rule 12(f). Rule 12(f) authorizes courts to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f). Affidavits and/or attached exhibits accompanying memoranda in support of motions for summary judgment, or the memoranda themselves for that matter, however, are not among the documents identified as "pleadings" by the Federal Rules. *See* Fed. R. Civ. P. 7(a).   Courts in this district have consistently held that a motion to strike is not the proper device for countering exhibits or affidavits attached to memoranda in support of motions. *See,*

*e.g.*, *Porter v. Hamilton Beach/Proctor-Silex, Inc.*, 2003 WL 21946595, at *2 (W.D. Tenn. July 28, 2003)(finding that a motion to strike was "not the proper procedural device" by which to object to exhibits offered to support a motion); *see also Moore v. Baptist Mem. Coll. of Health Scis.*, 2010 WL 100551, at *8 n.2 (W.D. Tenn. Jan. 7, 2010)(finding that a deposition transcript is not a pleading subject to a motion to strike as contemplated by Rule 12(f)); *Scott v. Dress Barn*, 2006 WL 870684, at *2 (W.D. Tenn. Mar. 31, 2006)(citations omitted)(refusing to strike an affidavit because it is not a pleading).

Courts presented with inadmissible evidence should disregard the evidence rather than striking it from the record. *Lombard v. MCI Telecom. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998)(citing *State Mut. Life Assur. Co. of Am. V. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979)). For a party to preserve its objection to a court's consideration of material which it believes to be inadmissible, "it is enough for the movant to make its objections known in a reply memorandum if one is permitted, in open court if a hearing is held, or otherwise." *Porter*, 2003 WL 21946595, at *2 (citing *Lombard*, 13 F. Supp. 2d at 625). The court therefore recommends that Berry's motions to strike be denied and that Berry's objections to the declarations of Armbruster and Orlowski be noted on the record.

16

Rule 56(c) governs the admissibility of statements in declarations used to support or oppose a motion for summary judgment. Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4). Whenever the court receives accompanying affidavits with a memorandum either in support of or in opposition to a motion for summary judgment, it must evaluate the contents and determine whether the affidavits meet the relevant criteria under the Federal Rules of Civil Procedure.

1.  *Armbruster's declaration*

Berry generally objects to ¶¶ 4, 6, 8, 9, 11-14, 16-18, and 20 because these statements contradict Berry's previous testimony. (*See* Pl.'s Mot. to Strike, ECF No. 90.) Berry's objections stem from a misunderstanding of the law. "It is accepted that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting *his or her own previous sworn statement* (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Trustees of Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023, 1034

17

(E.D. Tenn. 2008)(internal quotations and citations omitted)(emphasis added). Berry objects because these statements contradict *her own prior testimony*, not the prior testimony of Armbruster. Accordingly, it is recommended that Berry's general objections to ¶¶ 4, 6, 8, 9, 11-14, 16-18, and 20 be overruled.

Berry objects to ¶¶ 7, 9, 14, 18, and 19 because the statements are inadmissible hearsay. (Pl.'s Mot. to Strike ¶¶ 6, 8, 12, 15 & 16, ECF No. 90.) Trans Union argues that the statements are admissible based on Armbruster's personal knowledge of business records kept in the normal course of TURSS's business. (Def.'s Resp. to Mot. to Strike Armbruster Decl. 3, ECF No. 95.)

In ¶ 7, Armbruster states that "[t]he TURSS representative explained to [Berry] that TURSS does not provide credit scores, only resident scores 'based on rental purposes,' which are different than credit scores because different factors are considered." (Armbruster Decl. ¶ 7, ECF No. 83-4.) The statement in ¶ 7 stems from Armbruster's personal knowledge of Berry's telephone correspondence with TURSS on June 26, 2018. (*Id.* ¶ 1.) The portion of Armbruster's statement quoting what the TURSS representative said to Berry appears verbatim in the business record cited in support of ¶ 7. (*See* First TURSS Log Dated June 26, 2018, Ex. 2, ECF No. 83-4.)

In ¶ 9, Armbruster states, "The TURSS operator again explained to [Berry] that TURSS does 'not work with the full credit score

only with the resident score.'" (Armbruster Decl. ¶ 9, ECF No.
83-4.) The statement in ¶ 9 stems from Armbruster's personal
knowledge of Berry's second telephone correspondence with TURSS on
June 26, 2018. (*Id.* ¶ 1.) The portion of Armbruster's statement
quoting what the TURSS representative said to Berry appears
verbatim in the business record cited in support of ¶ 9. (*See*
Second TURSS Log Dated June 26, 2018, Ex. 3, ECF No. 83-4.)

In ¶ 14, Armbruster states that "[o]n or about July 25, 2018,
TURSS sent a letter to Ms. Hua indicating that after its
investigation of [Berry's] dispute, [Berry's] Eviction Record was
modified to indicate that it had been dismissed on May 17, 2017."
(Armbruster Decl. ¶ 14, ECF No. 83-4.) The statement in ¶ 14 stems
from Armbruster's personal knowledge of TURSS's handling of
Berry's dispute. (*Id.* ¶ 1.) The statement also accords with the
business record cited in support of ¶ 14. (*See* July 25, 2018
Letter from TURSS to Hua, Ex. 7, ECF No. 83-4.)

In ¶ 18, Armbruster states that "[o]n or about August 7, 2018,
TURSS sent [Berry] a copy of its investigation results indicating
that it had removed the Eviction Record from [Berry's] Report. .
. ." (Armbruster Decl. ¶ 18, ECF No. 83-4.) The statement in ¶
18 stems from Armbruster's personal knowledge of TURSS's handling
of Berry's dispute. (*Id.* ¶ 1.) The statement also accords with
the business record cited in support of ¶ 18. (*See* Aug. 7, 2018
Letter from TURSS to Berry, Ex. 10, ECF No. 83-4.)

In ¶ 19, Armbruster states that "[o]n or about August 7, 2018,
TURSS sent a letter to Ms. Hua indicating that after its
investigation of [Berry's] dispute, the Eviction Record had been
removed from [Berry's] report." (Armbruster Decl. ¶ 19, ECF No.
83-4.) The statement in ¶ 19 stems from Armbruster's personal
knowledge of TURSS's handling of Berry's dispute. (*Id.* ¶ 1.) The
statement also accords with the business record cited in support
on ¶ 19. (*See* Aug. 7, 2018 Letter from TURSS to Hua, Ex. 11, ECF
No. 83-4.)

A business record is admissible under Fed. R. Evid. 803(6),
"where a sufficient foundation for reliability is established."
*Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir.
2009). "Business records are properly admitted under the business
records exception to the hearsay rule if they satisfy four
requirements: (1) they must have been made in the course of
regularly conducted business activities; (2) they must have been
kept in the regular course of business; (3) the regular practice
of that business must have been to have made the memorandum; and
(4) the memorandum must have been made by a person with knowledge
of the transaction or from information transmitted by a person
with knowledge." *Id.*

Armbruster's statements in ¶¶ 7, 9, 14, 18, and 19 satisfy
the business records exception to the hearsay rule. Armbruster
states that she has the requisite personal knowledge of the facts

20

asserted in her declaration.  (Armbruster Decl. ¶ 1, ECF No. 83-4.)  "It is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence."  *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008).  Accordingly, it is recommended that Berry's objections to ¶¶ 7, 9, 14, 18, and 19 be overruled.

   2. *Orlowski's declaration*

   Berry objects to ¶¶ 4-6 of Orlowski's affidavit because these statements are conclusory and are based on Orlowski's "opinion." (*See* Pl.'s Mot. to Strike 2-3, ECF No. 91.)

   In ¶ 4, Orlowski states:  "Credit scores are not 'included' in a credit report and are only calculated based upon specific request by a creditor.  Further, a credit score is not based on any 'particular item' that is on a consumer's report, as the calculation of a credit score is the result of several factors surrounding a consumer credit file." (Orlowski Decl. ¶ 4, ECF No. 83-7.)  In ¶ 5, Orlowski states:  "In order for the requested FICO 98 score to have been returned for [Berry], she would have had to have at least 2 accounts on her Trans Union credit file which had been updated in the last 6 months." (*Id.* ¶ 5.)  In ¶ 6, Orlowski states:  "At the time the score was requested, [Berry] only had a

bankruptcy public record entry on her credit file, and no accounts, so the FICO 98 credit scoring model could not calculate or return a score." (*Id.* ¶ 6.)

All three of Orlowski's statements stemmed from Orlowski's personal knowledge. (*Id.* ¶ 1.) Berry has not come forward with any evidence to contest the basis for Orlowski's knowledge. *See Red Strokes Entm't, Inc. v. Sanderson*, 977 F. Supp. 2d 837, 844 (M.D. Tenn. 2013)(overruling objections to an affidavit where the objecting party failed to "submit[] any testimony or documentary evidence" to contest the basis for the affiant's knowledge); *Bailey v. USF Holland, Inc.*, 444 F. Supp. 2d 831, 846 (M.D. Tenn. 2006)(overruling objections to affidavits where the objecting party failed to show "a lack of personal knowledge or factual support for any portion of the affidavits"). Accordingly, it is recommended that Berry's objections to ¶¶ 4-6 be overruled.

B.    <u>Trans Union's Motion for Summary Judgment</u>

While no specific subsections of the FCRA are delineated in Berry's General Sessions warrant,[6] Berry's claims about the accuracy of the Eviction Record and Trans Union and TURSS's reinvestigation of her disputes are construed to allege violations of §§ 1681e(b) and 1681i under the FCRA. *See Swafford v. Experian Info. Sols., Inc.*, 2019 WL 5597310, at *4 (M.D. La. Aug. 27, 2019), *report and recommendation adopted*, 2019 WL 5616968 (M.D. La. Sept. 11, 2019)(construing a similar *pro se* complaint as alleging violations of specific subsections of the FCRA). Accordingly, this court will construe Berry's General Sessions civil warrant as alleging violations of §§ 1681e(b) and 1681i under the FCRA.

Berry argues that she has made out a prima facie claim under § 1681e(b) by establishing genuine issues of fact as to: (i) whether Trans Union and TURSS reported inaccurate data on her consumer report; and (ii) whether Trans Union and TURSS took

---

[6] Berry's response in opposition to Trans Union's motion for summary judgment seeks to assert various causes of actions against Trans Union that are not mentioned in the General Sessions civil warrant. (*See* Pl.'s Resp., ECF No. 87.) Berry cites her proposed amended complaint and second amended complaint throughout her response. Berry's General Sessions civil warrant remains the operative pleading in this case. *See Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

reasonable steps to investigate and resolve her dispute. (Pl.'s
Resp. 13, ECF No. 87.) As to her § 1681i claim, Berry argues that
there is a genuine issue of material fact as to whether Trans Union
and TURSS failed "to properly reinvestigate the false [Eviction
Record] in [Berry's] consumer report after receiving her dispute."
(*Id.* at 15.) Berry argues that the "evidence shows . . . the
public record of eviction was in fact inaccurate." (*Id.*) Berry
also broadly asserts that Trans Union was required to provide a
credit score for Berry in connection with the Report. (*Id.* at 2.)

This court has taken judicial notice of the accuracy of the
Eviction Record. (*See* Order, ECF No. 120.) Apart from the
accuracy of the Eviction Record, Trans Union contends: (i) that
Berry has produced no evidence establishing that she was damaged
by the inclusion of the Eviction Record; (ii) that Berry has not
come forward with any evidence establishing that Trans Union or
TURSS caused Berry's American Express credit card application to
be denied in January 2018;[7] (iii) that the FCRA does not permit a
consumer to dispute the omission of a credit score; (iv) that
Berry's claims for emotional distress lack the required

---

[7] Berry applied for the American Express credit card in
January 2018, months before she first disputed the accuracy of the
Eviction Record. Trans Union is not be liable for alleged damages
arising before the time Trans Union was put on notice that Berry's
information was possibly inaccurate. *See Casella v. Equifax Credit
Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995)("Prior to being
notified by a consumer, a credit reporting agency generally has no
duty to reinvestigate credit information.")

specificity to be compensable; (v) that the General Sessions civil warrant does not articulate a basis for Berry's claims against Trans Union; and (vi) that Trans Union is not the proper party. (Def.'s Mem. 7-15, ECF No. 81-1.)

C.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland Cty. Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case. LaPointe, 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to establish that there is more than "some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., 8 F.3d 335, 340 (6th Cir. 1993); see also LaPointe, 8 F.3d at 378. "[T]he mere existence of some

alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no genuine issue of material fact."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);
*LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must
determine whether 'the evidence presents a sufficient disagreement
to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law.'" *Patton v. Bearden*,
8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251-
52). The evidence, all facts, and any inferences that may
permissibly be drawn from the facts must be viewed in the light
most favorable to the non-moving party. *Anderson*, 477 U.S. at
255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v.
Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). But to defeat a
motion for summary judgment, "[t]he mere existence of a scintilla
of evidence in support of the [nonmovant's] position will be
insufficient; there must be evidence on which the jury could
reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252;
*LaPointe*, 8 F.3d at 378. Finally, a court considering a motion
for summary judgment may not weigh evidence or make credibility
determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31
F.3d 375, 369 (6th Cir. 1994).

26

D.  <u>Berry's FCRA Claims</u>

The FCRA creates a private cause of action to enforce many of its terms. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012). Consumers may sue for willful or negligent violations of the FCRA. *Id.* (citing 15 U.S.C. §§ 1681n, 1681o).

"The FCRA, 15 U.S.C. § 1681 *et seq.*, . . . is designed to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which 'utilize correct, relevant and up-to-date information in a confidential and responsible manner.'" *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 843-44 (6th Cir. 2004)(quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). "The FRCA imposes distinct obligations on three types of entities: (1) consumer reporting agencies[;] (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Id.* at 844 (citing *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999)). Berry purports to hold Trans Union liable as a consumer reporting agency. Trans Union does not dispute that it is a "consumer reporting agency" under the FCRA.

When preparing consumer reports, consumer reporting agencies must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Further, "if the completeness or accuracy of any item of information contained in

27

a consumer's file at a consumer reporting agency is disputed by
the consumer . . . the [consumer reporting] agency shall, free of
charge, conduct a reasonable reinvestigation to determine whether
the disputed information is inaccurate and record the current
status of the disputed information, or delete the item from the
file. . . ."  15 U.S.C. 1681i(a)(1)(A).

Upon completing the reinvestigation, if "an item of the
information is found to be inaccurate . . . the consumer reporting
agency shall . . . (i) promptly delete that item of information
from the file of the consumer, or modify that item of information,
as appropriate, based on the results of the reinvestigation; and
(ii) promptly notify the furnisher of that information that the
information has been modified or deleted from the file of the
consumer." *Id.* § (a)(5)(A).

1. *Section 1681e(b) claim*

Berry's first claim is under 15 U.S.C. § 1681e(b), "which
requires consumer reporting agencies 'follow reasonable procedures
to assure maximum possible accuracy' when preparing a consumer
report." *Nelski*, 86 F. App'x at 844.  To assert a claim under §
1681e(b), a plaintiff must prove:  (i) the consumer reporting
agency reported inaccurate information about the plaintiff; (ii)
the consumer reporting agency either negligently or willfully
failed to follow reasonable procedures to assure maximum possible
accuracy of the information about the plaintiff; (iii) the

28

plaintiff was injured; and (iv) the consumer reporting agency's
conduct was the proximate cause of the plaintiff's injury. *Id.*

Inaccuracy is an essential element of a claim under §
1681e(b). *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996).
"The Sixth Circuit decides § 1681e(b) claims under a 'technically
accurate' standard." *Jones v. Equifax Info. Servs., LLC*, 2019 WL
5872516, at *4 (W.D. Tenn. Aug. 8, 2019); *see also Shaw v. Equifax
Info. Sols., Inc.*, 204 F. Supp. 3d 956, 960 (E.D. Mich. 2016)("The
Sixth Circuit has held that reporting is accurate for purposes of
the FCRA as long as it is technically accurate, or accurate on its
face. . . ."). A consumer report is "technically accurate" if it
contains factually accurate information about a consumer, "even if
the information is potentially misleading." *Jones*, 2019 WL
5872516, at *4. "The inclusion of accurate historical information
about an account does not, therefore, result in a violation. . .
." *Id.*

"Although a showing of inaccuracy is an essential element of
a claim under § 1681e(b), the FCRA does not impose strict liability
for incorrect information appearing on an agency's credit
reports." *Nelski*, 86 F. App'x at 844 (citing *Spence*, 92 F.3d at
382-83). "Instead, liability flows from failure to follow (1)
reasonable procedures (2) to assure maximum possible accuracy of
the information (3) concerning the individual about whom the
information relates." *Dickens v. Trans Union Corp.*, 18 F. App'x

29

315, 317-18 (6th Cir. 2001)(quoting *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982)). The relevant standard of conduct applicable to determining the adequacy of consumer reporting is "what a reasonably prudent person would do under the circumstances." *Id.*

Courts within the Sixth Circuit have granted summary judgment dismissing § 1681e(b) claims where there is some evidence establishing the accuracy of the information reported. *See, e.g.*, *Strohmeyer v. Chase Bank USA, N.A.*, 2019 WL 3574564, at *4 (E.D. Tenn. Aug. 5, 2019)(granting summary judgment for a consumer reporting agency where there was no evidence of an inaccurate report); *Grays v. Trans Union Credit Info. Co.*, 759 F. Supp. 390, 393 (N.D. Ohio 1990)(granting summary judgment for a consumer reporting agency where the agency had accurately reported what was on public record, noting: "There is no need to inquire into the reasonableness of a credit reporting agency's procedures if it is demonstrated at the outset that the report in question is in fact true").

There is no genuine issue of material fact as to whether Trans Union or TURSS violated § 1681e(b) because the technical accuracy of the Eviction Record has been established. (Order, ECF No. 120.) Technical accuracy is a complete defense to a claim under § 1681e(b). *Jones*, 2019 WL 5872516, at *4; *Spence*, 92 F.3d at 382.

Accordingly, this court recommends that Trans Union is entitled to summary judgment on the § 1681e(b) claim.

   2. *Section 1681i claim*

    Berry argues that Trans Union and TURSS violated § 1681i "by failing to reinvestigate the false record of eviction in [Berry's] consumer report after receiving her dispute." (Pl.'s Resp. 15, ECF No. 87.)  Section 1681i states in relevant part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute. . . .

15 U.S.C. § 1681i(a)(1)(A).  Upon completing the reinvestigation, if "an item of the information is found to be inaccurate . . . the consumer reporting agency shall . . . (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *Id.* § (a)(5)(A).

    While accuracy is a required element of a claim under § 1681e(b), it is unclear in the Sixth Circuit "whether a showing of inaccuracy is required for § 1681i liability." *Dickens*, 18 F.

31

App'x at 319 (citing *Salei v. Am. Exp. Travel Related Services Co., Inc.*, 134 F.3d 372, 1997 WL 809956, *3 (6th Cir. Dec. 19, 1997)(unpublished)("It is unclear whether [the credit reporting agency] could be liable for inadequate procedures in the absence of any inaccuracy on Salei's report. *Even if a showing of inaccuracy is not a predicate to liability, damages would be almost impossible to prove without it* . . . ")(emphasis in original citation)); *see also Jones*, 2019 WL 5872516, at *3 ("To state a claim for willful or negligent violation under [§§ 1681e(b) or 1681i], Plaintiff must assert an inaccuracy in Trans Union's reporting."); *Deandrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)("[T]he weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.").

Here, the accuracy of the Eviction Record has been established. (Order, ECF No. 120); *see Jones*, 2019 WL 5872516, at *4 ("The inclusion of accurate historical information about an account does not, therefore, result in a violation of [§] 1681i."). And even if there were a genuine issue of fact about the accuracy of the Eviction Record, this court is satisfied that both Trans Union and TURSS conducted reasonable reinvestigations of Berry's disputes.

As to TURSS, Berry sent a letter dated July 7, 2018 disputing the omission of her credit score and the accuracy of the Eviction

32

Record.  (Armbruster Decl. ¶ 10, ECF No. 83-4; July 8, 2018 Dispute Letter from Berry to TURSS, Ex. 4, ECF No. 83-4.)  TURSS received Berry's dispute letter on July 13, 2018, and in response, performed a reinvestigation into the accuracy of the Eviction Record by contacting the Shelby County General Sessions Court to confirm that the eviction had been dismissed.  (Armbruster Decl. ¶ 11, ECF No. 83-4; TURSS's First Investigation Log, Ex. 5, ECF No. 83-4.)  Less than thirty days later, on July 25, 2018, TURSS sent Berry and Hua its investigation results stating that TURSS had modified Berry's file to show that the Eviction Record was dismissed on May 16, 2017.  (Armbruster Decl. ¶¶ 13 & 14, ECF No. 83-4; July 25, 2018 Letter from TURSS to Berry, Ex. 6, ECF No. 83-4; July 25, 2018 Letter from TURSS to Hua, Ex. 7, ECF No. 83-4.)

TURSS then received a second dispute letter from Berry on July 27, 2018.  (Armbruster Decl. ¶ 15, ECF No. 83-4; July 24, 2018 Dispute Letter from Berry to TURSS, Ex. 8, ECF No. 83-4.)  TURSS reinvestigated Berry's dispute a second time by confirming with the Shelby County General Sessions Court that the eviction was not a landlord-tenant matter and removing the Eviction Record from Berry's file.  (Armbruster Decl. ¶ 16, ECF No. 83-4; TURSS's Second Investigation Log, Ex. 9, ECF No. 83-4.)  Less than thirty days later, on August 7, 2018, TURSS sent Berry and Hua its second investigation results stating that the Eviction Record had been removed from Berry's file.  (Armbruster Decl. ¶¶ 18 & 19, ECF No.

83-4; Aug. 7, 2018 Letter from TURSS to Berry, Ex. 10, ECF No. 83-
4; Aug. 7, 2018 Letter from TURSS to Hua, Ex. 11, ECF No. 83-4.)

As to Trans Union, Berry sent a letter dated July 7, 2018
disputing the omission of her credit score, the accuracy of her
"resident score," and the accuracy of the Eviction Record. (Wagner
Decl. ¶ 9, ECF No. 83-4; July 7, 2018 Dispute Letter from Berry to
Trans Union, Ex. 1, ECF No. 83-3.) Less than thirty days later, on
July 16, 2018, Trans Union sent Berry a copy of its investigation
results stating that the disputed information did not appear in
Berry's Trans Union file. (Wagner Decl. ¶ 11, ECF No. 83-4; July
16, 2018 Letter from Trans Union to Berry, Ex. 2, ECF No. 83-4.)

In both of its reinvestigations, TURSS contacted the Shelby
County General Sessions Court to determine the accuracy of the
Eviction Record, modified or removed the Eviction Record, and
timely notified both Berry and Hua of its findings. *See* 15 U.S.C.
§§ 1681i(a)(1)(A) & (a)(5)(A). Further, in Trans Union's
reinvestigation, Trans Union confirmed that the disputed
information did not appear in Berry's Trans Union file and notified
Berry accordingly. *See id.* § (a)(1)(A). Berry has not come
forward with any evidence from which a reasonable jury could
conclude that Trans Union or TURSS acted unreasonably in
investigating Berry's disputes. Accordingly, this court
recommends that Trans Union is entitled to summary judgment on the
§ 1681i claim.

34

## III. RECOMMENDATION

Accordingly, it is recommended that Berry's motions to strike portions of Armbruster and Orlowski's declarations be denied but that her motions be treated as objections to portions of both declarations and that the objections be overruled.  It is further recommended that summary judgment be granted in favor of Trans Union.

Respectfully submitted this 30th day of March, 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.

35